IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

UNITED STATES OF AMERICA,

        Plaintiff/Respondent,

vs.                                            NO. CIV   08-711 RB/LFG
                                                   NO. CR     05-217 RB-1

ROBERT SEDILLO GUTIERREZ,

        Defendant/Movant.

## ORDER DENYING MOTION FOR DISMISSAL OF COUNSEL

THIS MATTER is before the Court on Defendant/Movant Robert Sedillo Gutierrez's ("Gutierrez") Motion for Dismissal of Counsel [Doc. 44]. The Court considered the motion and Response of Gutierrez's counsel [Doc. 49], took judicial notice of the Court's records, <u>St. Louis Baptist Temple, Inc. v. FDIC</u>, 605 F.2d 1169, 1172 (10th Cir. 1979), and determines that oral argument is not necessary. For the reasons hereafter stated, the Court concludes that the motion is not well-taken and will be denied.

Gutierrez seeks to replace his attorney, D. Eric Hannum, less than 14 days prior to a scheduled evidentiary hearing on June 22, 2011. He complains his attorney is ill-prepared, has not investigated his claims, and has declined to subpoena the property owner, Meferro Peralta ("Peralta"), to testify at his hearing.

His attorney asserts that Gutierrez lacks faith and trust in him, that their relationship has broken, and that replacement counsel should be appointed. Counsel further asks the Court to vacate the June 22 evidentiary hearing to allow new counsel to prepare. [Doc. 49.]

## **Background**

The government's trial theory was that a cooperating individual, Estanislad Cordova ("Cordova"), was facing her own drug-trafficking charges along with a potential charge relating to the use of a weapon in connection with a drug-trafficking crime. Drugs were found at Cordova's residence during the execution of a warrant relating to a stolen riding lawn mower.

In an effort to seek leniency, Cordova, through her attorney, agreed to provide information concerning her source of drugs. Cordova told Detective Islas that she had made multiple purchases of methamphetamine from Gutierrez at a residence located on Kansas Street, in Albuquerque, New Mexico. Some of the drugs were consumed by her; some were sold. She advised that Gutierrez did not live at the Kansas Street residence, but resided at 1800 Pennsylvania, No. 46. Cordova would contact Gutierrez at a particular number and would meet him in front of the Kansas Street home. Gutierrez would then go to the rear of the house and, a few minutes later, return to complete the drug transaction.

Based on this information, detectives set up surveillance of the Kansas Street address and observed conduct occurring that was consistent with drug trafficking. Specifically, vehicles would pull up to the Kansas Street home, Gutierrez would meet with the driver of the vehicle, and then go to the rear of the property. He would return a few minutes later, meet with the driver, and the driver would leave. Detective Islas believed this pattern, which occurred several times, was consistent with drug trafficking, although the detective never saw the drug transaction or any exchange of drugs for money.

Based on the information provided by Cordova, as well as the observations on the activities at the Kansas Street residence, a search warrant was obtained for the Kansas Street property. A search failed to result in finding any drugs or drug paraphernalia at the Kansas Street home. Rather,

2

two elderly men, both on oxygen, were residing at the home. The home was owned by one of the two individuals, Meterio Peralta ("Peralta"). Peralta did not see any drug activity, did not see Gutierrez sell any drugs, and noted that Gutierrez was not the owner of the home.

While on the property for purposes of conducting the search warrant, detectives went to the backyard, and saw a ladder placed against a tall tin corrugated fence. The fence separated the Peralta home from an adjoining vacant lot full of junk cars, refuse, and delapidated outbuildings. That lot was owned by Mr. Kilgore, who resided in Arizona.

Detectives noted a worn pathway to the fence, and found a removable sheet of tin allowing access to the lot. There was another well-worn footpath from the fence to a vehicle. Detectives sought and obtained permission from the owner, Mr. Kilgore, to search his property. A search resulted in finding various quantities of drugs, and packaging material, including baggies, tape, electronic scales, and plastic gloves.

The police also found that the ground on the lot had been disturbed around a piece of corrugated tin. They removed the tin and dug in the dirt, ultimately finding a plastic bucket containing nearly 8 pounds of methamphetamine. The amount of methamphetamine found was greater than one would possess for personal use and was consistent with sales and distribution of drugs.

During the course of the search of the junkyard, the police also located a cellular phone receipt with Gutierrez's name and an address which was later determined to be that of Gutierrez's mother. In addition, during the course of the police search, a neighbor who lived close to the Kansas Street address testified that Gutierrez would climb the ladder and enter the junkyard.

Cordova, the cooperating individual, testified that Gutierrez bragged about burying drugs and also about burying a large quantity of cash at another location, possibly his mother's home. The

police obtained Gutierrez's mother's consent to search her property. Buried beneath a tree on the mother's property, in a fashion similar to that where the methamphetamine was found in the junkyard, police located a pickle jar with $77,200 in cash. They, later, found a list of items needed to make methamphetamine in the FBI search of Gutierrez's residence.

## Present Motion

Gutierrez's complaints against his attorney are similar to the complaints he has asserted against all attorneys previously appointed. For example, Gutierrez contends that Brian Pori, the attorney originally appointed to represent him and who successfully defended Gutierrez's case to a mistrial, was ineffective, unprepared and failed to adequately represent him. *See, e.g.*, Gutierrez's declaration [Doc. 10, filed October 6, 2008]. So, too, in this pending § 2255 proceeding, Gutierrez makes the same claims against attorney Kenneth Del Valle, contending that he was ill-prepared, failed to adequately defend him, and was ineffective in representing him.

Gutierrez's present motion belies the allegations of ineffective assistance against attorney Hannum. For example, his very motion confirms that Mr. Hannum has interviewed prior counsel and reviewed court records. Moreover, as is expected by competent counsel, Mr. Hannum has not opposed his client's present motion, arguing that Gutierrez should have an attorney in whom he has great confidence.

A review of the docket indicates nothing to support Gutierrez's contention that Mr. Hannum is providing ineffective assistance. The fact that Gutierrez does not like Mr. Hannum or is dissatisfied with his performance, or even that he would like a new attorney appointed is simply not determinative. The law imposes no obligation on a client to like an attorney or to be pleased with his attorney's representation. *See, e.g.,* United States v. Ammons, 2011 WL 1130447, *3 (6th Cir. Mar. 28, 2011) (unpublished) ("A defendant is not entitled to new counsel and the delay that comes

with it every time he disagrees with counsel's strategic judgment."); United States v. Turk, 870 F.2d 1304, 1307-08 (7th Cir.1989) and United States v. Hillsberg, 812 F.2d 328, 333-34 (7th Cir. 1987) (Sixth Amendment does not require that a client and his attorney have a good rapport; denial of a request for new counsel because of a personality conflict or disagreement over trial strategy does not usually add up to an abuse of discretion). Instead, the test as to whether an attorney's performance is constitutionally defective is one of objective reasonableness. Strickland v. Washington, 466 U.S. 668, *reh'g denied*, 467 U.S. 1267 (1984).

It is only when an attorney's performance falls below a reasonably objective standard that the Court will remove an appointed attorney. Here, the allegations do not rise to such a level. Moreover, Mr. Hannum possible strategic decision not to call Peralta to testify does not amount to evidence of ineffective assistance. There is no dispute that Gutierrez was not the owner of the Kansas Street property, nor is there a dispute that Peralta never saw Gutierrez engage in illegal conduct. Presentation of that evidence from Peralta in this § 2255 proceeding adds nothing to the case.

In addition, it is uncontested that Gutierrez is not the owner of the adjoining junkyard. Mr. Kilgore is the owner of the junkyard, and it is Mr. Kilgore who gave permission to law enforcement to search the junkyard, just as police officers obtained permission to search Gutierrez's mother's property from his mother and sister.

Gutierrez argues that his attorneys are ineffective for not challenging the consensual searches. He is again in error. A motion to suppress the evidence was filed and argued, contending that the evidence seized from the junkyard should not be admitted. The trial court previously found that Gutierrez lacked standing to object as he was not the owner of either the junkyard or the property where the money was seized. Even if Gutierrez asserted an ownership interest in the drugs

5

or money, which he has not done, this would not be sufficient to confer standing. *See* Rawlings v. Kentucky, 448 U.S. 98, 105-106 (1980) (Possession of narcotics is illegitimate, and ownership or possession of contraband seized does not alone confer standing).

To the extent Gutierrez wants Mr. Hannum to present testimony of Peralta or Mr. Kilgore, the evidence that Gutierrez is not the owner is simply undisputed. Accordingly, an attorney may properly make a tactical decision of not presenting information that does not advance the client's theory of the case. *See* Bullock v. Carver, 297 F.3d 1036, 1047 (10th Cir.) ("strategic or tactical decisions on the part of counsel are presumed correct, unless they were completely unreasonable, not merely wrong"), *cert. denied*, 537 U.S. 1093 (2002).

The Court further notes that allowing a replacement of counsel at the eleventh hour would, of necessity, result in the Court having to vacate the June 22, 2011 evidentiary hearing. In this case, an evidentiary hearing has been set on seven occasions, and there have been three requests by Gutierrez to vacate the hearings. *See, e.g.,* Docs. 26, 29 and 33.

The Court has an independent obligation to ensure that cases are brought to a final completion within a reasonable period of time. Granting Gutierrez's request to replace counsel would lead to unreasonable delay.

The Court notes that this is a civil action. Gutierrez is not entitled to Court-appointed counsel under provisions of the Sixth Amendment to the Constitution which is applicable only to criminal proceedings. However, the Court does recognize that when an evidentiary hearing is required, the Court appoints counsel. *See* Espinoza v. Estep, 276 F. App'x 781, 784 (10th Cir. May 1, 2008) (unpublished) (district court has discretion to appoint counsel in habeas proceeding, and an applicant has a federal statutory right to counsel if an evidentiary hearing is required; however, there is no constitutional right to assistance of counsel in pursuit of habeas relief) (*citing* Rule 8(c)

of the Rules Governing Section 2254 Cases and <u>Swazo v. Wyo. Dept. of Corrs. State Penitentiary Warden</u>, 23 F.3d 332, 333 (10th Cir. 1994)), *cert. denied*, 129 S.Ct. 256 (2008).  In this case, the Court appointed a competent attorney to represent Gutierrez.

The Court finds that Gutierrez's present motion is consistent with his pattern of complaints against prior counsel, and finds that the motion fails to show a departure by counsel from an objectively reasonable standard.  The motion to replace counsel is DENIED, and the Court will proceed with the evidentiary hearing as scheduled.  Gutierrez's attorney is free to make tactical and strategic decisions about which witnesses to call.

    IT IS SO ORDERED.

*Lorenzo F. Garcia*
Lorenzo F. Garcia
United States Magistrate Judge